IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES T. DAVIS,

        Plaintiff,                       No. CIV S-07-1383 FCD EFB P

    vs.

D. CALVIN, et al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff, a prisoner proceeding in pro se, filed this action under 42 U.S.C. § 1983 alleging civil rights violations. Pending before the court are the motions to dismiss filed on behalf of defendants McDonald, Roche and James on the ground that plaintiff has failed to state a claim upon which relief can be granted, and on behalf of Amero, Houghland and McBride on the ground that plaintiff failed to exhaust the available administrative remedies. For the reasons explained below, the motions must be granted.

       Plaintiff's complaint asserts the following claims: (1) that defendants Calvin, Brewer, and Rath[1] searched his cell in retaliation for plaintiff having filed a grievance against defendant

////

---

[1] These defendants have not moved for dismissal on any ground.

1

1  Calvin; (2) that defendant Houghland denied plaintiff a staff assistant or investigative employee[2]
2  for disciplinary proceedings in violation of the Due Process Clause of the Fourteenth
3  Amendment; (3) Amero found plaintiff guilty of a rules violation while simultaneously finding
4  that plaintiff was the victim of retaliation in violation of Due Process Clause of the Fourteenth
5  Amendment; (4) that defendant McDonald cancelled plaintiff's administrative appeal in
6  violation of the Due Process Clause of the Fourteenth Amendment; (5) that McBride violated
7  plaintiff's due process rights by falsely stating that he refused to cooperate with an
8  administrative appeal; (6) that defendants James and Roche conspired to violate plaintiff's rights
9  by agreeing to withhold medical authorization for plaintiff to have extra toilet paper; (7) that
10 James was deliberately indifferent to plaintiff's serious medical needs by failing to authorize
11 plaintiff to have extra toilet paper and by prescribing only Tylenol to treat plaintiff for pain.

**I.  Facts**

The underlying dispute from which plaintiff's various claims arise is his contention that Dr. James diagnosed him with fecal incontinence, for which he required but was denied extra hygienic paper, and that his grievance in that regard was not handled properly. Complaint (hereafter, "Compl."), at 6. "Fecal incontinence" is a condition in which stool unexpectedly leaks from the rectum. Compl., at 6, & Attach. 1, at 41. This typically is caused by damaged anal sphincter muscles, loss of storage capacity in the rectum, pelvic floor dysfunction or diarrhea. *Id.* The records plaintiff submits with his complaint show that on June 2, 2005, Dr. James examined plaintiff for complaints of severe pain in his rectum and rectal bleeding.[3]

---

[2] Plaintiff does not define "staff assistant" or "investigative employee."

[3] In addition to the allegations in the body of the complaint, plaintiff has attached documents to the complaint. Although courts will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir.1997), *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001), a "court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint." *Id.* Moreover, the court may disregard allegations of the complaint that are contradicted by attached exhibits. *Durning v. First Boston*

Compl., Attach.2, at 62.  He found that plaintiff's anatomy was normal, his stool was positive for "occult blood," and diagnosed plaintiff with "rectal pain and irritation of undetermined etiology, probably proctitis."  Compl., Attach. 2, at 62.  When plaintiff requested authorization for extra hygienic paper, Dr. James told plaintiff that he must talk to custody staff about it.  *Id*.  On August 26, 2005, plaintiff returned to Dr. James with complaints of rectal bleeding and fecal incontinence.  Compl. Attach. 2 at 52.  Dr. James performed a physical examination, determined that his anatomy and musculature was normal, no blood was present and the stool was negative for "occult blood."  *Id.*  He diagnosed plaintiff with "fecal incontinence of undetermined etiology."  *Id.*  Dr. James prescribed medication for pain and irritation and noted that plaintiff had an appointment with a specialist.  *Id.*

On April 29, 2006, plaintiff requested that Calvin, a guard, provide plaintiff with extra hygienic paper.  Compl., at ¶ 12, at 6.  Calvin admitted that he knew about plaintiff's medical condition but denied the request.  *Id*.  On April 30, 2006, plaintiff filed a grievance.  Compl., Attach. 1, at 9.  Defendant Rath, Calvin's supervisor, investigated plaintiff's complaint by interviewing both plaintiff and defendant Calvin.  Rath determined, based on the interview with Calvin, that plaintiff had six rolls in his cell.  *Id.*  Plaintiff alleges that defendant Rath promised to "fix" plaintiff's problems with Calvin.  Compl., ¶12, at 7.  In support of this allegation, plaintiff refers to a memorandum from the associate warden showing that Rath discussed the matter with Calvin, who admitted to having provided extra hygienic paper to plaintiff in the past.  Compl., Attach. 1, at 43.  However, Calvin explained that on April 29, 2006, no extra supplies were available.  *Id.*  Nothing in that document suggests that defendant Rath promised to remedy any difficulties between defendant Calvin and the plaintiff.

////

---

*Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

On July 1, 2006, Calvin again denied plaintiff extra hygienic paper, explaining that supplies were inadequate to accommodate the request. Compl., ¶ 12, at 7. Plaintiff complained to defendant Rath, who said he would "take care of it." *Id.* Two days later, on July 3, 2006, Rath, Calvin and Brewer[4] removed plaintiff and his cell-mate from the cell, searched the cell and "trashed" it. *Id.*; Compl., Attach. 1, at 15. When plaintiff asked why they had conducted the search, Rath stated that the search was in response to plaintiff's complaint. *Id.* Plaintiff filed an administrative appeal of this conduct. *Id.*, ¶ 12, at 8. On July 6, 2006, defendant Calvin wrote a rules violation report accusing plaintiff of refusing a direct order to move away from the cell door during the July 3 search. *Id.*, & Attach. 1, p. 29.

On July 10, 2006, plaintiff filed a grievance requesting that Roche authorize plaintiff to have extra hygienic paper because of his medical condition. Compl., ¶ 14, at 10. He alleges that Roche denied the authorization on the ground that plaintiff had not been diagnosed with fecal incontinence. *Id.* In support of this allegation, plaintiff relies on Roche's memorandum decision on the second level of review. Compl., Attach. 2, at 56. Roche found that medical examinations revealed that plaintiff had normal sphincter control, and that if he did not the medical department would issue disposable diapers for him. Compl., Attach. 2, at 56. Roche concluded that plaintiff did not have a diagnosis that would cause a loss of bowel control that would justify the need for an extra roll of toilet paper. *Id.*

On July 11, 2006, plaintiff discussed the pending rules violation report with defendant Houghland. Plaintiff explained that he did not intend to waive any procedural rights he had with respect to the disciplinary hearing. Compl., ¶ 13, at 8. Thus, plaintiff requested an "investigative employee" and a "staff assistant" pursuant to the California Code of Regulations. *Id.* Plaintiff alleges that Houghland "became irate" and refused to assign anyone to investigate the matter or to assist plaintiff. Compl., ¶ 13, at 9. At the hearing on the report, Amero was the

---

[4] Plaintiff alleges that Lingerfelt participated too, but this defendant has not been served.

senior officer. Plaintiff alleges that Amero categorized the cell search as punitive and retaliatory, and because plaintiff generally was well behaved, the rules violation report would be reduced to a "custodial counseling chrono."[5] Compl., ¶ 13, at 9. Plaintiff's attachments reflect no finding by Amero that the search was retaliatory or punitive. Instead, they show that Amero found plaintiff guilty of the charge, but reduced the charge because plaintiff's "disabilities and the way in which the officers were attempting to communicate, [sic] mitigates the willfulness of his actions." Compl., Attach.1, at 27. On August 30, 2006, plaintiff filed a grievance complaining that Amero did not hold a rank adequate to conduct the hearing on the rules violation report and that Amero failed to dismiss the charge after stating that the search had been punitive and retaliatory. Compl. ¶ 13, & Attach. 1, at 24-25. Plaintiff's attachments also show that on October 21, 2006, defendant McBride had a different guard make a public announcement that plaintiff must "get ready to go to program," and that when he arrived at plaintiff's cell to escort him, Davis refused to leave the cell. Compl., Attach. 1, at 36. Defendant McDonald drafted a memorandum on the second level of review finding that on October 21, 2006, plaintiff refused to be interviewed or provide any information about his complaint. Compl., Attach. 1, at 23. McDonald therefore cancelled the appeal on the ground that plaintiff failed to cooperate with the appeals process in violation of California Department of Rehabilitation and Corrections regulations.[6] Compl. ¶ 13, at 9 & Attach. 1, at 23. Defendants have submitted the declaration of N. Grannis stating that the California Department of Rehabilitation and Corrections has no record that plaintiff pursued the matter to the Director's Level of Review. Defs.' Mot. to Dism., Attach. 1, Decl. of Grannis, at ¶¶ 5, 7-8.

////

---

[5] Plaintiff does not identify this term.

[6] Regulations applicable to prisoner grievances require prison officials to cancel an appeal if a prisoner refuses to be interviewed or otherwise fails to cooperate with the reviewer. Cal. Code Regs. tit. 15, § 3084.4(d).

5

## II.     Standards on Motion to Dismiss

The Supreme Court has revisited the standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and has confirmed that to survive such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964, 1970 (2007)  (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of its claims which would entitle plaintiff to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").  Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic*, 127 S.Ct. at 1965.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the compliant are true (even if doubtful in fact)." *Id*.  Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true, *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984), and the court construes the pleading in the light most favorable to plaintiff, resolving all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to include specific facts necessary to support the claim. *NOW*, 510 U.S. at 256 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The court may consider matters of public record, including

pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**III.  Analysis**

**A.  The Cancelled Appeal**

Plaintiff claims that defendant McDonald[7] violated his right to due process and his First Amendment rights by canceling an administrative appeal. Compl., at 13. McDonald contends that this claim should be dismissed because there is no federally protected interest in a prison administrative appeals system. Defs.' Mot. to Dism., at 4. Plaintiff concedes that Ninth Circuit precedent forecloses any due process claim, but asserts that McDonald violated his First Amendment right to petition the government for redress. Pl.'s Opp'n, at 3-4. For the reasons explained below, plaintiff correctly concedes that he has no due process claim. Furthermore, he cannot state a claim that his right to petition the government for redress was violated.

////

---

[7] It is not clear whether plaintiff exhausted his claim against McDonald. However, the court can dismiss for failure to state a claim without requiring exhaustion. 42 U.S.C. § 1997e(c)(2).

### 1. Due Process

To state a claim for the deprivation of procedural due process, plaintiff must allege that a defendant deprived him of a liberty interest, which may arise independently under the due process clause or as freedom from state deprivation or restraint imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). Here, the crucial first step is to determine whether a liberty interest was at stake. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Plaintiff's claim implicitly alleges that he had a federally protected liberty interest in the prison grievance process. However, the Ninth Circuit has found that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988).

Here, plaintiff filed an appeal about the way in which the rules violation report was handled. He complains that his appeal was cancelled. As his attachments show, prison officials believed that he refused to cooperate with the investigation into his complaint. For that reason they cancelled the appeal. Thus, plaintiff's grievance was not resolved on the merits. However, this alone is not adequate to establish a due process violation. Even if the court were to infer that McDonald's stated reason for the cancellation was pretextual, under controlling precedent plaintiff cannot state a claim for relief. Prisoners simply have no federally protected interest in a grievance procedure. *Mann*, 855 F.2d at 640. Plaintiff fails to state a claim under the Due Process Clause of the Fourteenth Amendment and the motion to dismiss this claim must be granted.

### 2. Right to Petition for Redress-First Amendment Claim

Plaintiff's argument in opposition to dismissal suggests an alternative theory for relief.

////

Inmates retain those First Amendment rights that are not inconsistent with their status as prisoners or with the legitimate penological goals of the corrections systems.[8] *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among those rights, prisoners have a First Amendment right to file prison grievances. *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003). There is no dispute in that regard. However, there is no corresponding right to a response. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985) (right to petition is a right of expression); *see also*, *Apple v. Glenn*, 183 F.3d 477, 479-80 (6th Cir. 1999) (plaintiff who alleged public officials violated his First Amendment to petition the government by not responding to his letters or taking the actions requested therein failed to state a claim). Here, plaintiff seems to claim that the cancellation of his appeal denied him of a response to which he is constitutionally entitled. The law is clear that he is not. The First Amendment does not comprehend the right to any response whatsoever. *McDonald,* 472 U.S. at 482  Thus, plaintiff cannot state a claim that McDonald violated his right to petition the government for redress.

### B. Medical Care

Plaintiff claims that defendant James diagnosed him with fecal incontinence, but failed to provide adequate medical care for it in violation of plaintiff's Eighth Amendment rights. He asserts that his symptoms included rectal bleeding and limited bowel control, which required him to have more hygienic paper than ordinarily was provided. Compl., at 14. Defendant James contends that the attachments to plaintiff's complaint demonstrate that he provided constitutionally adequate care. Defs.' Mot. to Dism., at 6. To state a claim that inadequate medical care violates the Eight Amendment's prohibition of cruel and unusual punishment plaintiff must allege acts or omissions evidencing identified defendants knew of and disregarded plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v.*

---

[8] Plaintiff does not present this claim in the complaint, but rather, argues it in his opposition to the motion to dismiss. Accordingly, the court addresses it not as a question of whether to dismiss the claim but, instead, to deny any suggested request for leave to amend to add it. As discussed below, any such amendment is futile.

*Brennan*, 511 U.S. 825, 837 (1994).  A medical condition that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, and chronic and substantial pain constitute serious medical needs.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).  Neither defendants' negligence nor plaintiff's general disagreement with the treatment he received suffices to state a claim.  *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996).  "A prisoner need not prove that he was completely denied medical care."  *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000); *see Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).

      Here, defendants appear to concede that plaintiff's condition and symptoms presented a serious medical need.  The attachments show that defendant James examined plaintiff twice based on complaints of rectal bleeding and severe pain.  They do not show, however, that James was indifferent.  At each exam he found that plaintiff's anatomy was normal.  At the first exam plaintiff's stool was positive for "occult blood," and at the second it was negative.  James diagnosed "rectal pain and irritation of undetermined etiology, probably proctitis" at the first exam, and "fecal incontinence of undetermined etiology" at the second.  At both appointments, Dr. James prescribed oral and topical medications.  When, at the August 26, 2005, appointment plaintiff complained that he needed more toilet paper, Dr. James told plaintiff that additional toilet paper was a matter for the custody officers.  In short, defendant James did not ignore plaintiff's complaints, including the request for more toilet paper.  Dr. James referred plaintiff to those who provide daily supplies, i.e., the custody officers.[9]  Moreover, plaintiff's attachments show that Calvin explained that he had provided extra hygienic paper in the past, but on April 29, 2006, there was no extra paper to distribute.  Plaintiff's evidence, showing that he began

---

[9] This is not surprising considering that some prisoners will intentionally clog toilets with foreign matter in order to flood their cells.

10

requesting extra paper in August of 2005 but apparently did not have difficulty in obtaining it until April 2006, corroborates Calvin's statements that ordinarily he complied with plaintiff's requests.

Plaintiff's own attachments to the complaint show that defendant James provided medical attention, and nothing in the complaint or the attachments thereto suggests that he knew that plaintiff required extra hygienic paper but was refused it.  Plaintiff fails to state a claim for relief against defendant James.

### C. Roche and James - Conspiracy Claim

Plaintiff claims that defendants Roche and James "aided and abetted the [other defendants'] concerted intimidation and harassment by combining, conspiring, confederating and agreeing to withhold a medical chrono[10] for extra toilet paper knowing their conduct would result in the abuse of plaintiff being subjected to the whim of irate prison guards by withholding the paper."  Compl., at ¶ 22.  Presumably this alleged conspiracy to withhold toilet paper refers to the allegation of deliberate indifference discussed above and is premised on a claim that the defendants acted in concert to withhold medical treatment.  To state a claim for conspiracy, plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing plaintiff harm and took some concerted action in furtherance thereof.  *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999); *Burns v. County of King*, 883 F.2d 819, 822 (9th Cir. 1989) (conclusory allegations of conspiracy insufficient to state a valid § 1983 claim); *see also*, *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege facts showing an agreement among the alleged conspirators to deprive him of his rights); *see also*, *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege at least facts from which such an agreement to deprive him of rights may be inferred).

---

[10] Plaintiff does not define this term.

11

1 Nowhere does plaintiff allege facts suggesting that defendants Roche and James agreed
2 to take action to deny plaintiff extra toilet paper, let alone agreed to deprive plaintiff of needed
3 medical treatment. None of plaintiff's attachments suggest that defendant James thought that
4 extra hygienic paper was a medical necessity. Significantly, plaintiff's attachments to the
5 complaint show that Roche was of the opinion that plaintiff did not require additional toilet
6 paper based on his medical condition. Compl., Attach., at 49. Thus, even if Roche and James
7 agreed to deny the request, the complaint and attachments do not show that the end they sought
8 to accomplish, i.e., deny plaintiff extra toilet paper, was unlawful. For these reasons, plaintiff
9 fails to state a claim that Roche and James conspired against him.

10 **IV.    Failure to Exhaust**

11 Plaintiff claims that Amero, Houghland and McBride violated his right to due process in
12 the context of the rules violation report filed by Calvin and the hearing thereon. These
13 defendants seek dismissal of plaintiff's claims against them on the ground that plaintiff did not
14 exhaust the available administrative remedies. Defs.' Mot. to Dism., at 1-2.

15     **A.  Standards Applicable to This Motion**

16 Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure.
17 While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving
18 questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003),
19 the reason underlying that decision has been undermined. The Ninth Circuit found that failure to
20 exhaust was a matter in abatement which should be raised in a motion made under
21 "unenumerated Rule 12(b)." *Wyatt*, 315 F.3d at 1119. However, the United States Supreme
22 Court recently clarified that failure to exhaust is an affirmative defense which defendant has the
23 burden of pleading and proving. *Jones v. Bock*, 549 U.S. 199, ___, 127 S.Ct. 910, 921 (2007).
24 Federal courts appropriately consider affirmative defenses on summary judgment. Here,
25 defendant's motion necessarily requires the court to consider the affidavits and exhibits
26 presented for the purpose of proving the absence of exhaustion. If matters external to the

12

pleadings are presented to the court and not excluded, a Rule 12(b)(6) motion for failure to state a claim must be treated as a motion for summary judgment. *Rosales v. United States*, 824 F.2d 799, 802 (9th Cir. 1987). Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.[11]

### B. Rule 56 Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

---

[11] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On December 14, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

////

### C. 42 U.S.C. § 1997e(a)

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statue makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for grievance content. *Id.*, at §§ 3084.2, 3085. Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. *Id.*, at § 3084.5. A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level. *See Id.*, at § 3084.5(e)(1). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. *Id.*, at § 3084.1(a).

### D. Analysis

As noted above, plaintiff claims that Houghland, Amero and McBride violated his right to due process in the handling of his administrative appeal.[12] Compl., at 17. Apart from their co-defendants' argument that plaintiff fails to state a claim, these defendants contend that plaintiff failed to exhaust the available administrative remedies, asserting that plaintiff did not appeal to the Director's Level of Review as required by California regulations and therefore by 42 U.S.C. § 1997e(a). Defs.' Mot. to Dism., at 5-6. It is undisputed that plaintiff was charged with disobeying an order, and that a disciplinary hearing was held on the charge. It also is undisputed that plaintiff filed an administrative appeal. The record shows that on October 21, 2006, McBride told plaintiff that he had to go "to program," and that plaintiff refused. There is no evidence about whether McBride told plaintiff that the matter involved the administrative appeal. When, on the second level of review, McDonald learned that plaintiff had refused to go when McBride called, he cancelled the appeal on the ground that plaintiff refused to cooperate. California regulations permit cancellation on this failure to cooperate ground and federal law requires prisoners to follow state rules and regulations in order to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a). *See Booth,* 532 U.S. at 741; *see also, McKinney,* 311 F.3d at 1200.

Insofar as plaintiff claims that McBride falsely reported plaintiff's refusal to cooperate, he contests the ground for cancelling the appeal, implying that he did in fact comply with the regulations and that prison officials actually prevented him from exhausting the available administrative remedies. However, this simply underscores the reasons for the exhaustion requirement. If, as plaintiff argues, the factual predicate for the cancellation was erroneous, he could and should have filed an initial grievance about this as well. *See* Cal. Code Regs. tit. 15,

---

[12] This includes the due process claims predicated on allegations that plaintiff was denied an investigator and a staff assistant, he was found guilty even though he was the victim of retaliation, and the appeal of the decision after the hearing on the rules violation charge was cancelled.

§ 3084.1(a). Defendants have submitted uncontested evidence that plaintiff did not appeal the cancellation to the Director's Level of Review, where he could have argued that the basis therefor was untrue. There is no genuine dispute about whether plaintiff exhausted the available administrative remedies as required by 42 U.S.C. § 1997e(a).

**V.    Conclusion**

For the reasons stated above, the court finds that plaintiff fails to state a claim for relief against defendant Dr. James for deliberate indifference to his serious medical needs or for conspiracy to deny him constitutionally adequate medical care. Neither does he state a claim that defendant McDonald violated either the Due Process Clause of the Fourteenth Amendment or the Petition Clause of the First Amendment by cancelling his administrative appeal. Finally, there is no genuine issue of material fact about whether plaintiff exhausted the available administrative remedies for his claims against McBride, Houghland and Amero.

Accordingly, it is hereby RECOMMENDED that:

1. The February 14, 2008, motion to dismiss be granted and that:

   a. Plaintiff's claim that Dr. James was deliberately indifferent to plaintiff's serious medical needs be dismissed for failure to state a claim;

   b. Plaintiff's claim that Dr. James and Roche conspired to violate plaintiff's right to constitutionally adequate medical care be dismissed for failure to state a claim;

2. The March 14, 2008, motion to dismiss be granted and that:

   a. Plaintiff's claims against McBride, Houghland and Amero be dismissed for plaintiff's failure to exhaust the available administrative remedies; and,

3. Defendants Calvin, Brewer, and Rath, who did not move for dismissal of any claims, be given 30 days to file and serve an answer to the complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections

18

with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 4, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE